## Renda Broadcasting Corp. v. Lafarge Corp.

C.P. of Allegheny County, no. GD98-3513.

*John A. Renda,* for plaintiff.
*Paul David Burke,* for defendant.

BALDWIN, *J.,* May 2, 2001—The appellant, Lafarge Corporation appeals from the order of this court dated February 27, 2001, granting the motion to enforce settlement filed by the appellee, Renda Broadcasting Corporation. Lafarge filed a statement of matters complained of on appeal with this court pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Therein, Lafarge asserts that this court committed three errors of law.

Lafarge initially argues that this court committed an error of law under Rule 206.7 of the Pennsylvania Rules

of Civil Procedure by granting Renda's motion to enforce settlement. Lafarge also contends that this court committed an error of law by granting Renda's motion to enforce settlement since there never was a final settlement agreement to memorialize the parties' compromise, settlement and general release for the litigation. Lastly, Lafarge argues that this court committed an error of law by granting Renda's motion to enforce settlement, in that Lafarge has consistently maintained that if there is a final settlement between the parties, it is embodied in the compromise, settlement, and general release document dated April 17, 2000.

A review of the pleadings in this case reveals that on February 27,1998, Renda instituted this equitable action against Lafarge, and the City of Pittsburgh Urban Redevelopment Authority. More specifically, the complaint filed in equity states, inter alia, that Renda demands that the chancellor grant to it the remedy of specific performance from Lafarge with respect to an alleged option to purchase certain real property known as "Nine Mile Run."

Lafarge had leased this specific parcel of land to Renda. These parties then renewed the lease for this property on or about May 5, 1992. The URA subsequently acquired this property from Lafarge, through a sale. Next, Renda notified Lafarge and the URA of its intention to exercise its purchase option for this property under the lease. However, neither Lafarge, nor its successor, the URA, recognized Renda's right concerning the purchase option for the sale of this property. As a result, the defendants refused to sell the property to Renda. This suit followed.

In addition, the complaint in equity states that Renda demands specific performance from the URA, as a successor of Lafarge, with respect to this alleged option to purchase "Nine Mile Run." Alternatively, Renda seeks money damages against the defendants for an alleged breach of contract.

After the complaint was filed, the adversarial parties entered settlement negotiations in good faith to attempt to reasonably resolve the dispute, and to avoid protracted litigation. During the settlement negotiations, the parties were unable to reach a global settlement. Thereafter, the respective parties pursued settlement on a piecemeal basis. Renda and the URA eventually agreed on a mutual settlement resolving their particular disputes in regard to this litigation. That settlement agreement provided that the litigation would be terminated by and between these two parties only, in exchange for the URA providing Renda with a different location for its business operations. Lafarge, however, was not a party to that settlement agreement. The enforcement of that settlement agreement is not at issue here.

The settlement negotiations between Renda and Lafarge experienced a minor setback when Renda's legal counsel, Frederick Egler Jr., withdrew. Nonetheless, Renda and Lafarge both continued with their settlement efforts, despite the change in Renda's legal representation. *Finally, on March 15, 2000, Renda and Lafarge agreed to a complete settlement of the litigation for $495,000.* The enforcement of this settlement agreement is at issue here.

Following this mutual settlement of the litigation between Renda and Lafarge, the parties attempted to me-

morialize the binding terms of this negotiated agreement in separate drafts of a compromise, settlement and general release. (True and correct copies of these separate drafts dated April 17, 2000 and June 15, 2000, were attached as exhibits "A" and "B" to Lafarge's petition to enforce settlement agreement.) The parties' first and second drafts of the settlement agreement dated April 17, 2000 and June 15, 2000, respectively, do not differ in any material respects as to either party's actual understanding of the terms of the mutual agreement reached on March 15, 2000. The parties, however, disagree over which of the two noted drafts accurately summarizes the complete and entire agreement consummated between them.

Regardless of the apparent lack of consensus with respect to the written reduction of the terms of the settlement agreement, the enforceability of the parties' mutual agreement is not altered or vitiated. Stated another way, Lafarge does not dispute that Renda accepted its offer to settle this litigation for $495,000. The order of this court dated February 27, 2001, granting Renda's motion to enforce settlement should therefore be affirmed.

The law of this Commonwealth establishes that an agreement to settle a legal dispute between the parties is favored. *Compu Forms Control Inc. v. Altus Group Inc.,* 393 Pa. Super. 294, 305, 574 A.2d 618, 624 (1990) (Judicial policy favors settlements of lawsuits). Under Pennsylvania law, the judicial enforcement of a settlement agreement is governed by principles of contract law. *McDonnell v. Ford Motor Co.,* 434 Pa. Super. 439, 447,

643 A.2d 1102, 1105 (1994). In order for a settlement agreement to be enforced, the agreement must possess all of the requisite elements of a contract. See *e.g., Gogel v. Blazofsky,* 187 Pa. Super. 32, 36, 142 A.2d 313, 315 (1958).

Applying the above precepts to the case at bar, as we must, this court finds that Renda and Lafarge reached a valid settlement agreement for the instant litigation because the agreement of March 15, 2000, possessed all of the requisite elements of a valid contract, as a matter of law. Moreover, this court concludes that Renda voluntarily agreed to a complete and final settlement and discontinuance of *all* claims against Lafarge at docket no. GD98-3513. This settlement agreement also included the termination of the option to purchase the subject real estate in exchange for the lump-sum payment of $495,000 by Lafarge as valuable consideration to Renda for this compromise, settlement, and general release. Thus, Lafarge's initial argument must fail.

This court did not err in granting Renda's motion to enforce settlement as initially argued by Lafarge. Rule 206.7 of the Pennsylvania Rules of Civil Procedure, in pertinent part, provides that:

"Rule 206.7 Procedure After Issuance Of Rule To Show Cause . . .

"(b) If an answer is filed raising no disputed issues of material fact, the court on request of the petitioner shall decide the petition on the petition and answer.

"(c) If an answer is filed raising disputed issues of material fact, the petitioner may take depositions on those issues, . . . . If the petitioner does not do so, the petition

shall be decided on petition and answer and all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of this subdivision." Pa.R.C.P. 206.7 (West 2001).

Here, a rule to show cause was issued to Lafarge to show why Renda is *not* entitled to have its motion to enforce settlement granted. Lafarge filed an answer and then Renda filed a praecipe for argument with this court regarding this motion. Thereafter, the parties argued the merits of their respective positions to this court. By order of this court dated February 27, 2001, this court granted Renda's motion. This appeal followed.

Based on the arguments of counsel and the responsive pleadings, Lafarge has failed to convince this court that no settlement agreement, *i.e.,* contract, was ever reached between it and Renda. Accordingly, Renda is entitled to the specific relief it has requested.

Lafarge alleges that there were several material issues pertaining to the litigation that were not covered by the agreement in question. Specifically, Lafarge points out that Renda had allegedly admitted that the settlement negotiations were premised upon a complete settlement and final termination of the litigation by and between the parties. Upon closer scrutiny of the pleadings, this court is unable to find what *material* issues were not covered by the settlement agreement for purposes of our analysis. The alleged disputed items, as stated by Lafarge, are immaterial to the settlement agreement between these two parties.

Clearly, the alleged matters do not substantively affect the rights or liabilities of either Renda or Lafarge. In

our opinion, they are collateral in nature. Since the parties' agreement covers all of the material points, there is no basis, in fact or in law, to set aside the settlement agreement in this case. Thus, Lafarge's initial argument lacks merit.

Contrary to Lafarge's second argument, this court did not err in granting Renda's motion to enforce settlement. On this point, Lafarge asserts that there was no settlement agreement on March 15, 2000. This court disagrees.

In support of this contention, Lafarge argues that Renda could not agree with it on the precise terms of the settlement of this litigation, as manifested by the subsequent correspondence of counsel for purposes of memorializing the proposed settlement agreement dated April 17, 2000. Lafarge, however, fails to explain how this court is empowered to disregard the valid contract formed between it and Renda on March 15, 2000, when Renda accepted Lafarge's offer to settle this case.

Moreover, the alleged unsuccessful attempts of counsel to reduce the terms of the parties' settlement agreement here to a writing does not permit this court to ignore the relevant material facts which are not in dispute. *Mazzella v. Koken,* 559 Pa. 216, 221, 739 A.2d 531, 536 (1999) (A court must enforce the terms of a contract where the parties have agreed on all of the essential terms even if they have not yet formalized the agreement in writing); see also, *Field v. Golden Triangle Broadcasting Inc.,* 451 Pa. 410, 305 A.2d 689, 693 (1973). A settlement agreement must be enforced by a court where, as here, the agreement contains all of the requisites for a valid contract, as a matter of law. *McDonnell,* 434 Pa.

Super. 439, 447, 643 A.2d 1102, 1105 (1994); *Blazofsky,* 187 Pa. Super. 32, 36, 142 A.2d 313, 315 (1953).

The pleadings establish, as argued by counsel for Renda, that on March 15, 2000, Renda accepted the settlement offer made by Lafarge through counsel. In so doing, a valid contract was formed between the parties. Contrary to Lafarge's position, the subsequent correspondence and drafts between the attorneys for the two parties cannot be construed as either a rejection or a counteroffer of the agreed quid pro quo. In fact, this court is unable to find any assertion by either party's counsel that would essentially say that there was "no deal."

The pleadings further reveal that the parties reached a "meeting of the minds" on all of the material terms and subject matter of the settlement agreement in this case. As such, this court must disagree with Lafarge's proposition as to this point. Under the circumstances, this court cannot conclude that there was no settlement agreement reached between these parties. Hence, Lafarge's argument is flawed.

Lafarge's third argument, in essence, is no different than its previous ones. Simply put, Lafarge erroneously perceives that the parties' failure to reduce or memorialize this agreement, in some way, establishes that there *never* was a settlement. Again, this court disagrees.

In this case, the proposed drafts of the agreed upon settlement dated April 17, 2000, and June 15, 2000, are not "counteroffers" to the settlement agreement of March 15, 2000. These drafts merely attempt to summarize the terms of the settlement agreement already reached by

Lafarge and Renda. This court, therefore, finds that the parties had arrived at a valid, mutual settlement agreement on March 15, 2000, and that the parties' respective understandings of the terms of this settlement agreement do not vary in any material respects.

In summary, the pleadings establish that on March 15, 2000, Renda agreed to accept $495,000 from Lafarge as good and valuable consideration in exchange for a complete compromise, settlement and general release of all claims against Lafarge involving the subject real property in this case. Renda has agreed to the said final compromise, settlement, and general release. Lafarge, however, has not paid Renda.

Lafarge has failed to show that there was no settlement between it and Renda. The facts of record establish that Lafarge, and not Renda, failed to comply with the settlement agreement of March 15, 2000. Therefore, this court concludes that Lafarge's final argument must also fail.

For these reasons, the order of this court dated February 27, 2001, granting Renda's motion to enforce settlement should be affirmed.