J-A01002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RUTH S. ROYER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| UNUM LIFE INSURANCE COMPANY | : | No. 442 EDA 2020 |
| OF AMERICA AND NEUMANN | : | |
| UNIVERSITY | : | |

Appeal from the Order Entered January 9, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 190509005

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

:MEMORANDUM BY BENDER, P.J.E.:                **FILED:  APRIL 16, 2021**

Appellant, Ruth S. Royer, appeals from the trial court's January 9, 2020 order denying her petition to re-instate her case to active status and granting Appellee's, UNUM Life Insurance Company of America ("UNUM"), cross-motion to enforce the agreed-upon settlement.  We affirm in part and reverse in part.

The trial court summarized the relevant factual and procedural background as follows:[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Though not pertinent to the issues presented to us on appeal, Ms. Royer explains that:

> This matter arises from an action for breach of contract, insurance bad faith[,] and unjust enrichment brought by [Ms. Royer,] a disability insurance policyholder[,] against her long-term disability

On August 13, 2019, [Ms. Royer] and [Appellees, UNUM and Neumann, all acting through their respective attorneys,] orally agreed to a settlement over the phone. [UNUM] confirmed in writing the essential terms of their August 13, 2019 settlement agreement[,] which included: (1) the settlement amount; (2) "a general release globally, including any and all claims against [UNUM] and Neumann[";] (3) a confidentiality provision; and (4) a clause related to tax issues.

On August 21, 2019, [UNUM] emailed the written settlement agreement and release to [Ms. Royer]. On August 27, 2019, [UNUM] emailed [Ms. Royer] and suggested that [Ms. Royer] request the trial court to cancel the upcoming case management conference[,] to which [Ms. Royer] replied, "No problem." On August 28, 2019, [Ms. Royer] filed a letter with the trial court requesting "that [the] [c]ase [m]anagement [c]onference be cancel[l]ed while [the parties] finalize the resolution of the claim" because "the parties have reached an amicable resolution." At [Ms. Royer's] request, the trial court cancel[l]ed the case management conference. On August 28 and 29, 2019, the parties made additional changes to the written settlement agreement.[2] On August 29, 2019, after making these changes, [UNUM] emailed the revised written settlement agreement to [Ms. Royer] for [her] to sign.

> [2] Although it is unclear as to what "additional questions and issues" were discussed over the phone, the essential elements of the settlement agreement were agreed to during the August 13, 2019 phone call between counsel.

On September 12, 2019, [Ms. Royer] raised — for the first time — an additional issue regarding the method of disbursement of the settlement funds, specifically: (1) whether UNUM is "willing to fund a structured settlement and sign all the appropriate

_____

insurance carrier[, UNUM]. In addition to UNUM, [Ms.] Royer has sued her former employer[ — Appellee,] Neumann University[ ("Neumann") —] for its role in failing to properly oversee the provision of a contractually[-]mandated benefit to her pursuant to their employment relationship.

Ms. Royer's Brief at 5 (internal citations omitted).

documentation (specifically a Non-Qualified Assignment Document)?" and (2) whether UNUM is "willing to work with a Barbados[-]domiciled assignment company?" [UNUM] replied, "[M]y client can make a check payable to whomever your client instructs. Beyond that[,] it is up to her to make whatever arrangement she wishes."[2]

On November 5, 2019, [Ms. Royer] filed a [p]etition to [r]e-[i]nstate this [m]atter to [a]ctive [s]tatus…. On November 19, 2019, [UNUM] filed an answer in opposition to the [p]etition as well as [a c]ross-[m]otion to [e]nforce [the settlement agreement].[3] On January [9], 20[20], the trial court denied [Ms. Royer's p]etition and granted [UNUM's c]ross-[m]otion to [e]nforce [the s]ettlement [a]greement….

Trial Court Opinion ("TCO"), 3/16/20, at 1-3 (some brackets added; internal citations and footnote omitted).

In the trial court's January 9, 2020 order denying Ms. Royer's petition and granting UNUM's cross-motion to enforce, the trial court additionally stated that:

The [c]ourt deems the August 29, 2019 Settlement Agreement effective and enforceable. [Ms. Royer] shall sign the August 29, 2019 Settlement Agreement within 10 days from the date of entry of this order. If [Ms. Royer] fails to sign the August 29, 2019 Settlement Agreement within 10 days from the date of entry of this order, then upon [UNUM's] payment of the funds referenced in the August 29, 2019 Settlement Agreement into the [c]ourt's escrow account, the Office of Judicial Records shall mark the case settled, discontinued, and ended. Any escrow funds shall be released only by further application to the [c]ourt.

_____

[2] We also note that, on September 13, 2019, the trial court entered on the docket a "Trial Work Sheet[,]" which indicated that the case was "[s]ettled prior to assignment for trial[.]" Trial Work Sheet, 9/13/19, at 1.

[3] The docket also notes that a hearing on Ms. Royer's petition occurred on January 2, 2020.

Order, 1/9/20, at 1 (unnumbered; single page).[4]

In reaching its decision to enforce the settlement agreement, the trial court reasoned that, "during the[ parties'] August 13, 2019 phone call, [they] agreed on the essential terms of the settlement agreement[,] including[:] (1) the settlement amount, (2) release of claims 'globally, all claims against [UNUM] and against Neumann…,' (3) a confidentiality provision, and (4) a clause related to tax issues." TCO at 3. It also determined that "the parties intended those essential terms to be binding[,]" noting that their actions between August 13, 2019 and August 29, 2019 "confirmed that they had reached a final settlement of [Ms. Royer's] claims and agreed to be bound by that settlement agreement." *Id.* at 3, 4. In addition, the trial court discerned that "[t]he fact that [Ms. Royer] may have later changed her mind or desired to revoke her acceptance of the essential terms of the settlement agreement is ineffective to invalidate the parties' settlement agreement." *Id.* (citation omitted).

On January 19, 2020, Ms. Royer filed a timely notice of appeal from the trial court's January 9, 2020 order. The trial court did not order her to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and she did not do so. The trial court subsequently issued a Rule 1925(a) opinion.

Presently, Ms. Royer raises three issues for our review:

_____

[4] The docket reflects that UNUM deposited funds into the court's escrow account on February 6, 2020.

[1.] Did the trial court commit an error of law by granting UNUM's cross[-]motion to enforce [the] settlement agreement where there was no dispute that the oral settlement agreement was conditioned on the signing of a formal release agreement, and UNUM expressly indicated after the oral settlement agreement was reached that it would not pay the proceeds without receiving a signed release agreement?

[2.] Did the trial court commit an error of law by granting UNUM's cross[-]motion to enforce [the] settlement agreement where the manner in which the settlement proceeds were to be paid was an open consideration that the parties continued to negotiate after the oral settlement agreement was reached?

[3.] Did the trial court commit an error of law when it ordered [Ms.] Royer to sign a release agreement that contains terms and conditions objected to and not set forth within the scope of the oral settlement agreement?

Ms. Royer's Brief at 4.

## First Issue

In Ms. Royer's first issue, she argues that the trial court erred by granting UNUM's cross-motion to enforce the settlement agreement because "there was no dispute that the oral settlement agreement was conditioned on the signing of a formal release agreement, and UNUM expressly indicated after the oral settlement agreement was reached that it would not pay the proceeds without receiving a signed release agreement." *Id.* at 20 (emphasis omitted). We disagree with Ms. Royer that the trial court erred in this regard.

To begin, this Court has explained that:

The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the

appellate] court may review the entire record in making its decision.

**Ragnar Benson, Inc. v. Hempfield Township Mun. Auth.**, 916 A.2d 1183, 1188 (Pa. Super. 2007) (citations and quotation marks omitted). With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. **Skurnowicz v. Lucci**, 798 A.2d 788, 793 (Pa. Super. 2002) (citation omitted).

The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. **Compu Forms Control Inc. v. Altus Group Inc.**, … 574 A.2d 618, 624 ([Pa. Super.] 1990). There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. **Felix v. Giuseppe Kitchens & Baths, Inc.**, 848 A.2d 943, 946 (Pa. Super. 2004). If courts were called on to re-evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. **Greentree Cinemas Inc. v. Hakim**, … 432 A.2d 1039, 1041 ([Pa. Super.] 1981). Settlement agreements are enforced according to principles of contract law. **Pulcinello v. Consolidated Rail Corp.**, 784 A.2d 122, 124 (Pa. Super. 2001), *appeal denied*, … 796 A.2d 984 ([Pa.] 2002). "There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed[-]upon sum)." **Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick**, … 587 A.2d 1346, 1349 [(Pa. 1991)], *cert. denied*, 502 U.S. 867 … (1991).

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. **McDonnell v. Ford Motor Co.**, … 643 A.2d 1102, 1105 ([Pa. Super.] 1994), *appeal denied*, … 652 A.2d 1324 ([Pa.] 1994). This is true even if the terms of the agreement are not yet formalized in writing. **Mazzella v. Koken**, … 739 A.2d 531 536 ([Pa.] 1999); *see Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 147 (Pa. Super. 2006) (stating "an agreement is binding if the parties come to a meeting of the minds on all essential terms, even if they expect the agreement to be reduced to writing but that formality does not take place[]"). Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing. **Pulcinello**, **supra** (citing

> ***Kazanjian v. New England Petroleum Corp.***, … 480 A.2d 1153, 1157 ([Pa. Super.] 1984)). An offeree's power to accept is terminated by (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party. ***See First Home Savings Bank, FSB v. Nernberg***, … 648 A.2d 9, 15 ([Pa. Super.] 1994) (citing Restatement (Second) of Contracts § 36 (1981)), *appeal denied*, … 657 A.2d 491 ([Pa.] 1995). However, "[o]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such." Restatement (Second) of Contracts § 42, Comment c. (1981).

***Mastroni-Mucker v. Allstate Ins. Co.***, 976 A.2d 510, 517-18 (Pa. Super. 2009).

Ms. Royer claims that "[t]he August 13, 2019 oral settlement agreement is not binding as a matter of law because there is no dispute that settlement was conditioned on the signing of a formal release." Ms. Royer's Brief at 20. Specifically, she says that UNUM conceded in its response to her petition that (1) it "will not pay the proposed settlement without receiving a signed release agreement and the return of the original policies of insurance," and (2) that "[a]ll parties were aware at the time of the oral settlement that a formal settlement agreement and release would be executed." ***Id.***; ***see also id.*** at 21-22. She also asserts that the August 13, 2019 oral settlement agreement is not binding because "UNUM's proposed release agreement contains six … pages of text that includes topics not discussed at the time of the August 13, 2019 telephone call and not referenced within the six … line follow-up email, including: damages in the event of a breach of confidentiality, indemnification and hold harmless terms and conditions, acknowledgement of return of certificates of coverage, and non-disparagement." ***Id.*** at 22-23 (citation

omitted). Ms. Royer states that, "[i]n light of this evidence[,] the trial court erred by failing to find that settlement was conditioned on the signing of a formal release." *Id.* at 23.

We reject Ms. Royer's contention that the parties' settlement was conditioned on the signing of a formal release. Regarding oral settlement agreements, this Court has stated:

> Where the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement. Even the inability of the parties to an oral agreement to reduce such agreement to writing after several attempts does not necessarily preclude a finding that the oral agreement was enforceable.
>
> When there exists conflicting evidence as to whether the parties intended that a particular writing would constitute a complete expression of their agreement, the parties' intent is a question to be resolved by the finder of fact[.] We will not reverse such finding unless it is unsupported by the evidence, or unless the fact finder has clearly abused its discretion or committed an error of law. In reviewing such finding, we are mindful that it is understandable that when, after a prolonged period of negotiations, parties appear to reach agreement on the essential terms of an important transaction, one of them might believe that a contract had been made. However, before preliminary negotiations ripen into contractual obligations, there must be manifested mutual assent to the terms of a bargain.
>
> If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside.

"As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties." ***Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor***

*Control Bd.*, … 739 A.2d 133, 136 ([Pa.] 1999).  For instance, in *Franklin Interiors v. Wall of Fame Management Co.*, … 511 A.2d 761 ([Pa.] 1986), the contract at issue expressly stated that "this document does not become a contract until approved by an officer of Franklin Interiors." *Id.* at 762.  Our Supreme Court held that the contract was not enforceable because there was no evidence that an officer of Franklin Interiors ever approved or signed the contract. *Id.*; *see also InfoComp, Inc. v. Electra Prods.*, 109 F.3d 902 ([3d Cir.] 1997) (alleged agreement was unenforceable when it stated that it would not be deemed "accepted" until it was signed by an authorized officer or manager, and no signature was ever forthcoming).

In contrast, in *Shovel Transfer*, the parties agreed to all material terms of a contract and apparently intended to sign the contract, but one of the parties ultimately refused to sign it.  Our Supreme Court held that the agreement was enforceable, even in the absence of all signatures, because the parties did not expressly intend the agreement to be conditioned on signatures. *Shovel Transfer*, 739 A.2d at 138-[]39.

*Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 145-46 (Pa. Super. 2006) (some citations and footnote omitted).

As Appellees point out, "UNUM's counsel's email memorializing the conversation that led to settlement did **not** include a term that expressly required a signed settlement agreement and release as a precondition to forming a contract."  Appellees' Brief at 16 (emphasis in original; citations omitted).[5]  They also observe that Ms. Royer "clearly manifested her assent to the oral contract by her conduct — informing the court that the matter was amicably resolved."  *Id.* (citation omitted).  Appellees detail that:

General principles of contract interpretation govern whether litigants entered into a binding settlement agreement.  The elements necessary to give rise to an enforceable contract are an offer, an acceptance, and consideration.  The August 13, 2019

---

[5] UNUM and Neumann filed a joint brief.

Settlement Agreement contains each element. … In turn, [Ms.] Royer would not pursue her lawsuit further. By email sent on the same day as the phone call, U[NUM]'s counsel memorialized the agreement and stated his intent to reduce the agreement to a writing. [Ms.] Royer did not object to U[NUM]'s counsel's recital of the terms or ask for any additions or clarifications. [UNUM's] counsel then drafted a settlement agreement and release and provided it to [Ms.] Royer's counsel on August 21, 2019.

These facts demonstrate that the [p]arties agreed to all material terms to settle this case. Those terms, as they are required to be, were reasonably certain so that they provide a basis for determining the existence of a breach and for giving an appropriate remedy. That is all that is required to form a contract.

Furthermore, [Ms.] Royer manifested her assent to the agreement when her counsel represented to the [c]ourt that the [p]arties had reached an agreement. As the deadline for the [p]arties to submit their [c]ourt-mandated case management memoranda approached, [Ms.] Royer's counsel had had an opportunity to read and review U[NUM's] counsel's email memorializing the material elements of their agreement and the proposed settlement and release. With that information at hand, [Ms.] Royer's counsel responded, "No Problem[,]" and offered to write the letter informing the [c]ourt … about the settlement. And he did. The next day, [Ms.] Royer's counsel represented to the [c]ourt, "the parties have reached an amicable resolution…." Relying on that representation, the [c]ourt cancelled the conference[,] and on September 13, 2019[,] docketed a Trial Work[ S]heet that reflected the [p]arties' settlement.

**Id.** at 10-12 (internal citations and emphasis omitted).

Moreover, regarding the concessions Ms. Royer purports UNUM made and the additional terms contained in the proposed release, Appellees persuasively respond that:

To undermine the viability of the agreement, [Ms.] Royer contends U[NUM] conceded in its [r]esponse to [Ms.] Royer's [p]etition to [r]e-open that "U[NUM] submitted a proposed agreement to [Ms. Royer] that specifically requires the receipt of a fully[-]executed copy of the release agreement and the return of the original policies of insurance issued by U[NUM] before U[NUM] will pay the

settlement amount." However, U[NUM] denied that allegation as stated. Further, U[NUM] set forth the terms o[f] the [a]greement earlier in its response and never stated that a signed release was required to settle this matter.[6]

Similarly, the fact that U[NUM's] proposed release included additional terms such as a non-disparagement clause or acknowledgments of return of certificates of coverage does not defeat the agreement that the [p]arties reached. To form a valid contract, the parties must agree to all material terms. The fact that contracting parties leave additional non-essential terms for a later date does not destroy the viability of the contract. Because Pennsylvania law recognizes that the parties may have some Is to dot and Ts to cross when they reach an oral settlement, Pennsylvania does not require each non-material term to be agreed to at the time the oral contract is formed.

*Id.* at 16-17 (internal citations omitted). We concur with Appellees. The parties agreed to the essential terms of the settlement agreement on August 13, 2019. The fact that the parties ***intended*** to formalize those terms in a writing does not mean that the settlement was ***conditioned*** on the signing of a formal release and agreement. Moreover, there is sufficient evidence

_____

[6] ***See, e.g.***, UNUM's Response to Ms. Royer's Petition to Re-instate the Matter to Active Status and Cross-Motion to Enforce the Agreed-Upon Settlement, 11/19/19, at ¶ 5 ("On August 13th, the parties reached a settlement of this case. … The parties specifically discussed and agreed to the following terms: 1) U[NUM] would pay [Ms. Royer] the amount proposed … at mediation; 2) [Ms. Royer] would release all claims against U[NUM] and Neumann[]; 3), confidentiality; and 4) U[NUM] was making no representations as to tax consequences."); *id.* at ¶ 9 ("On August 13th, [c]ounsel for [Ms. Royer] and [c]ounsel for U[NUM] agreed to the terms, outlined in Paragraph 5 of this [m]otion — settlement amount, scope of release and parties released, confidentiality, and no representations by U[NUM] as to tax consequences. [Ms. Royer] raised no issue on August 13, 2019 about wanting to have a side agreement for payments over time with a foreign financing company; indeed that would have been contrary to the agreed[-]upon term that U[NUM] was making no representations as to tax consequences. There were no terms or conditions discussed but left open for later discussion.").

- 11 -

supporting that Ms. Royer intended to be bound by the August 13, 2019 oral agreement, namely, by representing to the trial court that the parties had "reached an amicable resolution…." ***See*** Petition to Re-Instate to Active Status, 11/5/19, at Exhibit A. Thus, no relief is due on this basis.

### Second Issue

In Ms. Royer's second issue, she avers that the trial court erred by granting UNUM's cross-motion to enforce the settlement agreement "where the manner in which the settlement proceeds were to be paid was an open consideration that the parties continued to negotiate after the oral settlement agreement was reached." Ms. Royer's Brief at 29 (emphasis omitted). Ms. Royer says that, "[i]n addition to the requirement of a formal settlement agreement being reached, there were ambiguities in the informal settlement agreement in the nature of how the settlement funds were to be paid." ***Id.*** She states that "[t]he ability to place the settlement proceeds in a settlement structure is a material term of settlement to [her,]" and insists that "UNUM was aware of this ambiguity since the oral settlement was reached as there are numerous references in the communications between counsel as to how the proceeds should be paid." ***Id.*** at 29, 30. Therefore, Ms. Royer asserts that, because of this ambiguity, the "parties never agreed to terms essential to the formation of a binding agreement." ***Id.*** at 34.

Appellees counter that,

[n]ow, [Ms.] Royer claims the "ability to place the settlement proceeds in a settlement structure is a material term of settlement to [her]." [Ms.] Royer might feel that way now, but it was not

- 12 -

until a month after the [p]arties reached a settlement agreement that [Ms.] Royer's counsel[,] at her settlement structure agent's request[,] raised the issue with U[NUM]'s counsel: "To help my client choose the best product for her, the settlement structure agent we are working with at Sage Settlements has asked me to pose the following questions to U[NUM]…." Because [Ms.] Royer accepted the offer made by U[NUM] and Neumann, she cannot revoke that acceptance by later demanding new terms. But that is exactly what [Ms.] Royer has asked this Court to find.

In [her] brief, [Ms.] Royer asserts that her counsel first advised U[NUM] that she wanted to structure the settlement proceeds on August 29, 2019. U[NUM] and Neumann dispute this contention. [Ms.] Royer first attempted to inject new terms two weeks later on September 12, 2019[,] when her counsel emailed U[NUM]'s counsel regarding the disbursement of funds, specifically whether U[NUM] would fund a structured settlement and sign the necessary documents as well as whether it would work with a Barbados-domiciled assignment company. But here the dates do not matter. Even if [Ms.] Royer is correct, she was too late.

As [the trial court] correctly found, the [p]arties reached their agreement on August 13, 2019. This was still more than two weeks before [Ms.] Royer now claims to have first mentioned the new terms. [Ms.] Royer's counsel's representation to the [c]ourt that the [p]arties [had] settled occurred on August 28, 20[19], a day before [Ms.] Royer purportedly mentioned the new terms. At that point, the [c]ontract had already been formed.

[Ms.] Royer also points to the fact that U[NUM]'s willingness to issue two settlement checks or to add whatever payee [Ms.] Royer instructs somehow evidences that there was an ambiguity that prevented the formation of the contract. It does not. Rather, U[NUM] stood ready on August 13th to pay who ever [Ms.] Royer instructed [it] to pay. That U[NUM] was willing to make the check payable as instructed does not mean it was willing to sign additional agreements and paperwork to facilitate a structured settlement. If that was a material term to [Ms.] Royer, she needed to bring it up at the time the agreement was reached and not weeks later.

Appellees' Brief at 12-14 (internal citations and footnote omitted).

We find Appellees' analysis persuasive. We also find distinguishable the case Ms. Royer relies on in support of her argument, **Krebs v. United Refining Co. of Pennsylvania**, 893 A.2d 776 (Pa. Super. 2006). In **Krebs**, this Court determined that the parties never reached a meeting of the minds, as "the extent of the release to be given in exchange for a settlement figure was never agreed upon[.]" **Id.** at 785. Furthermore, in that case, "the parties had explicitly agreed that the settlement must be in writing to be enforceable[,]" and had failed to complete a written settlement agreement. **Id.** Here, in contrast, the parties agreed to a global release for a certain amount of money and did not expressly require the settlement agreement to be in writing to be effective. And, further, as Appellees discuss *supra*, the evidence supports that Ms. Royer did not raise the issue of settlement structure until weeks after the oral agreement had been reached, which undermines her argument that settlement structure was a material term of the agreement. Accordingly, Ms. Royer's second issue is meritless.

**Third Issue**

In Ms. Royer's third issue, she claims that the trial court erred "when it ordered [Ms.] Royer to sign a release agreement that contains terms and conditions objected to and not set forth within the scope of the oral settlement agreement." Ms. Royer's Brief at 35 (emphasis omitted). Specifically, she says that "UNUM's proposed release contains terms and conditions that were not part of the oral settlement agreement such as damages in the event of a breach of confidentiality, indemnification and hold harmless terms and

conditions, acknowledgment of return of certificates of coverage, and non-disparagement." *Id.* at 37.[7]

In support of this argument, Ms. Royer directs our attention to *Wolf v. Consolidated Rail Corp.*, 840 A.2d 1004 (Pa. Super. 2003). In *Wolf*, Wolf filed a complaint against his employer, seeking damages for injuries resulting from his employment. *Id.* at 1005. After jury selection but prior to the start of trial, the parties entered into an oral settlement agreement placed on the record before the trial judge, which addressed only the amounts and schedule of compensation that Wolf would receive from an annuity that provides periodic payments to Wolf. *Id.* The settlement agreement was "silent as to the execution or terms of any release." *Id.* at 1005-06. The employer subsequently sent a release to Wolf, which he refused to sign. *Id.* at 1006. The employer filed a motion to enforce the settlement, and the trial court granted it and dismissed the case with prejudice. *Id.* In granting the employer's motion to enforce the settlement, the trial court directed Wolf to execute the release. *Id.* Wolf filed a timely appeal, complaining that the trial court erred in instructing him to execute the release, which discharged the

---

[7] Appellees' contend that Ms. Royer waived this issue by failing to raise it before the trial court. *See* Appellees' Brief at 20-21. However, we deem it sufficiently preserved for our review. Ms. Royer argued below that the trial court "cannot force [her] to sign UNUM's proposed release" as it "contains terms and conditions that were not part of the oral settlement agreement" in her memorandum in support of her petition to re-instate the case to active status. Ms. Royer's Memorandum of Law in Support of the Petition to Re-Instate Case to Active Status, 11/5/19, at 20, 21 (unnecessary capitalization and emphasis omitted); *see also* Ms. Royer's Reply Brief at 1 (arguing that she preserved this issue below).

employer "from liability for all claims 'known and unknown,' whether related to the present injury or not[,]" and from "financial responsibility in the event that the issuer of the annuity is unable or unwilling to satisfy the terms of the settlement agreement." *Id.* Upon review, this Court affirmed in part and reversed in part, explaining:

> In this case, though Wolf refused to sign the release tendered by [his employer], it was not because he had changed his mind about the amount of money he had agreed to accept. Instead, Wolf balked at signing the release because [his employer] sought to make the in-court settlement agreement hinge upon the execution of a release that contained terms that were not a part of that agreement. Such a result flies in the face of basic contract law. *See Johnston v. Johnston*, … 499 A.2d 1074, 1078 ([Pa. Super.] 1985) (trial court could not compel parties to sign written contract that contained terms not included in settlement agreement placed on the record during trial).
>
> The trial court correctly determined that the verbal settlement agreement *as to amount* was proper and enforceable on its own terms, despite the absence of a formality such as a release. However, the court erred when it directed Wolf to sign the proffered release. If [his employer] wanted additional conditions on its agreement to settle — such as [Wolf's] signature on a broad general release — it should have made those terms explicit at the time it entered into the settlement agreement. As we stated in *Pulcinello*…:
>
>> Here we find the settlement agreement entered into by the parties expressed the intention to settle the case and was valid and binding despite the absence of any writing or formality. The signing of the release was not made a condition of the settlement and the tender of a release did not reopen the agreement or make its execution a condition to the settlement itself. Thus we find the agreement entered into by the parties to be final and binding despite the absence of the written, signed release.
>
> *Pulcinello*, [784 A.2d] at 125. Here, the agreement entered on the record is indeed enforceable; the release terms, however, were not made part of that agreement.

- 16 -

> ***Pulcinello*** does not stand for the proposition that a settling plaintiff who has agreed to an amount and terms of payment, must also agree to terms of a release he never had the opportunity to negotiate. The court in ***Pulcinello*** simply decided that once a plaintiff agrees to settle a case for a certain amount, he cannot change his mind about that settlement amount and thus refuse to sign a release. Though we agree with the trial court that the *settlement agreement* in this case is enforceable, we hold the trial court erred when it ordered [Wolf] to sign a release, the terms of which he did not approve.

***Wolf***, 840 A.2d at 1007 (internal citation omitted; emphasis in original).

Like the trial court in ***Wolf***, Ms. Royer claims that the trial court in the case *sub judice* erred in forcing her to sign UNUM's release because it contains terms and conditions that were not part of the oral settlement agreement. Based on the rationale of ***Wolf***, we agree with Ms. Royer. The trial court could enforce the August 13, 2019 oral settlement agreement between the parties; however, it could not order Ms. Royer to sign a release which contained terms and conditions that she did not accept.[8] In the August 13, 2019 oral

---

[8] Appellees make no attempt to distinguish ***Wolf***, and do not even mention it in their brief. Instead, they argue that Ms. Royer agreed to the August 29, 2019 proposed release because, "when [Ms.] Royer alerted the [c]ourt to the settlement[ on August 28, 2019], her counsel had in his possession a copy of the proposed settlement and release." Appellees' Brief at 21. We do not view Ms. Royer's representations to the court on August 28, 2019, as assent to the terms and conditions set forth in the August 29, 2019 proposed release. First, in Ms. Royer's letter to the trial court, she stated that "the parties have reached an amicable resolution that is in the process of being completed. I respectfully request that the [c]ase [m]anagement [c]onference be cancelled while we finalize the resolution of the claim." ***See*** Petition to Re-Instate to Active Status, 11/5/19, at Exhibit A. Thus, Ms. Royer did not inform the court that she agreed to the terms and conditions in the proposed release, but rather indicated to it the opposite — that is, she and Appellees were still finalizing the non-material terms and details. Second, the proposed release was clearly

settlement agreement, the parties only agreed to the settlement amount, the scope of release and parties released, confidentiality, and that no representations as to any tax consequences were made. Therefore, like the trial court in *Wolf*, the trial court here erred when it ordered Ms. Royer to sign a written release that was not consistent with the agreement made by the parties. *Id.* at 1008. Further, if UNUM wanted Ms. Royer to sign the release, it should have made that a condition of settlement. Accordingly, we affirm the trial court's conclusion that the August 13, 2019 oral settlement agreement is enforceable, but reverse its decision to the extent that the trial court required Ms. Royer to sign UNUM's August 29, 2019 proposed release.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/21

---

not completed on August 28, 2019, as the parties proceeded to revise it the next day. Consequently, we reject Appellees' argument that Ms. Royer is bound by the August 29, 2019 proposed release merely because she had a copy of an earlier version of it when she informed the trial court that the case was settled.

- 18 -