**Harry H. WOLF, Jr., Appellant,**

v.

**CONSOLIDATED RAIL CORPORATION,**
**Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 8, 2003.

Filed Dec. 31, 2003.

Jeffrey M. Scafaria, Philadelphia, for appellant.

Carol L. Hesz, Pittsburgh, for appellee.

Before: STEVENS, OLSZEWSKI, and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 Harry H. Wolf, Jr. ("Wolf") appeals from the Order of the Court of Common Pleas of Philadelphia County granting the Motion to Enforce Settlement filed by appellee, Consolidated Rail Corporation ("Conrail"). The issue before us is whether the trial court erred in granting Conrail's Motion, where Wolf objected to specific terms of a release. For the reasons below we affirm in part and reverse and remand in part.

¶ 2 On October 28, 1996, Wolf filed a complaint against Conrail pursuant to, *inter alia*, the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, seeking damages for injuries resulting from his employment by Conrail. Specifically, Wolf claimed to be permanently disabled by bilateral carpal tunnel syndrome. On April 11, 2002, after jury selection but prior to the commencement of trial, the parties entered into an oral settlement agreement placed on the record before the trial court judge. The agreement provides for a structured settlement involving an annuity that provides periodic payments to Wolf. The terms of the agreement entered on the record address only the amounts and schedule of compensation that Wolf is to receive. The settlement agreement is si-

lent as to the execution or terms of any release.

¶ 3 Conrail subsequently sent a release to Wolf, which he refused to sign. Conrail filed a Motion to Enforce Settlement, and the trial court granted Conrail's Motion, and dismissed the case with prejudice. The trial court's written order does not direct Wolf to execute the release. However, such direction was made from the bench. The trial court stated:

My ruling is that the case was settled ... that the general release is what it is and I agree with [counsel for Conrail], that should something occur down the line, in which Mr. Wolf contends is actionable, then whatever court is involved in that case will decide whether or not the general release binds Mr. Wolf or any claims against the railroad.

The bottom line is, I'm enforcing the settlement.

Mr. Wolf is directed to sign the release ....

¶ 4 The trial court further determined that an analysis of the validity of the release should be left for another day, when and if Wolf sues Conrail for other injuries at some later date. This timely appeal followed.

¶ 5 Wolf complains that the court erred in directing him to execute the release. He argues that the release is invalid under § 5 of FELA, 45 U.S.C. § 55. He objects to the terms of the release that discharge Conrail from liability for all claims "known and unknown," whether related to the present injury or not, and that discharge Conrail from financial responsibility in the event that the issuer of the annuity is unable or unwilling to satisfy the terms of the settlement agreement.

¶ 6 The trial court made no findings concerning the release generally. However, the record is clear that the terms of the release were not made part of the settlement agreement. Wolf argues that certain terms of the release violate § 5 of FELA which provides, in pertinent part:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void ....

45 U.S.C. § 55. Wolf asks that the objectionable provisions be stricken from the release because they allow Conrail improperly to avoid liability in contravention of the statute.

 ¶ 7 In a FELA case, the validity of a *release* is a matter of federal law, but the enforceability of a *settlement agreement* is a matter of ordinary contract law. *Good v. Pennsylvania R.R. Co.*, 384 F.2d 989, 990 (3d Cir.1967); *Pulcinello v. Consolidated Rail Corp.*, 784 A.2d 122, 124 (Pa.Super.2001); *Century Inn, Inc. v. Century Inn Realty, Inc.*, 358 Pa.Super. 53, 516 A.2d 765, 767 (1986). "If all material terms of the bargain are agreed upon, our courts will enforce the settlement." *Century Inn, supra.*

 ¶ 8 In addition, a settlement agreement, entered verbally before the trial judge, that expresses the intention of the parties to settle the case for an agreed amount of money, is valid and binding despite the absence of any writing or formality. *Good, supra.* In *Good*, the plaintiff was not permitted to change his mind about the settlement amount, refuse to sign a release and pursue a jury verdict of substantially more money. *Id.* The tender of a release did not reopen the agreement or make its execution a condition to the settlement itself. *Id.* The fact that the plaintiff's action had been brought under the FELA did not remove it from the realm of the law of contracts. *Id.; Pulcinello v. Consolidated Rail Corp., supra.*

¶ 9 In this case, though Wolf refused to sign the release tendered by Conrail, it was not because he had changed his mind about the amount of money he had agreed to accept. Instead, Wolf balked at signing the release because Conrail sought to make the in-court settlement agreement hinge upon the execution of a release that contained terms that were not a part of that agreement. Such a result flies in the face of basic contract law. *See Johnston v. Johnston,* 346 Pa.Super. 427, 499 A.2d 1074, 1078 (1985) (trial court could not compel parties to sign written contract that contained terms not included in settlement agreement placed on the record during trial).

¶ 10 The trial court correctly determined that the verbal settlement agreement *as to amount* was proper and enforceable on its own terms, despite the absence of a formality such as a release. *Good, supra.* However, the court erred when it directed Wolf to sign the proffered release. If Conrail wanted additional conditions on its agreement to settle—such as the plaintiff's signature on a broad general release—it should have made those terms explicit at the time it entered into the settlement agreement. As we stated in *Pulcinello, supra:*

> Here we find the settlement agreement entered into by the parties expressed the intention to settle the case and was valid and binding despite the absence of any writing or formality. The signing of the release was not made a condition of the settlement and the tender of a release did not reopen the agreement or make its execution a condition to the settlement itself. Thus we find the agreement entered into by the parties to be final and binding despite the absence of the written, signed release.

*Pulcinello, supra* at 125. Here, the agreement entered on the record is indeed en-

forceable; the release terms, however, were not made part of that agreement.

¶ 11 *Pulcinello* does not stand for the proposition that a settling plaintiff who has agreed to an amount and terms of payment, must also agree to terms of a release he never had the opportunity to negotiate. The court in *Pulcinello* simply decided that once a plaintiff agrees to settle a case for a certain amount, he cannot change his mind about that settlement amount and thus refuse to sign a release. Though we agree with the trial court that the *settlement agreement* in this case is enforceable, we hold the trial court erred when it ordered appellant to sign a release, the terms of which he did not approve.

¶ 12 Federal law, which controls the legality of releases in FELA cases, further supports our conclusion that the trial court erred in ordering appellant to sign the broad general release in this case. In *Wicker v. Consol. Rail Corp.,* 142 F.3d 690 (3d Cir.1998), *cert. denied,* 525 U.S. 1012, 119 S.Ct. 530, 142 L.Ed.2d 440 (1998), a similarly broad release was held to be invalid because it purported to foreclose future, unknown risks in addition to the known, specific injury:

> [A] release does not violate § 5 [of FELA] provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed. Claims relating to unknown risks do not constitute "controversies," and may not be waived under § 5 of FELA.

*Id.* at 700. To the extent that the release submitted to Wolf in this case includes terms that preclude future litigation as to unknown risks, the release would be void under FELA. *See, e.g., Wicker, supra; Babbitt v. Norfolk & W. Ry. Co.,* 104 F.3d 89, 93 (6th Cir.1997) (to be valid under

FELA a release must reflect a bargained-for settlement of a known claim for a specific injury as contrasted with an attempt to extinguish potential future claims).

¶ 13 The parties in this case entered into a settlement agreement whose only terms were set forth on the record of the instant civil action, which related to Wolf's bilateral carpal tunnel syndrome, bilateral ulnar entrapment at the elbows, and bilateral radial sensory nerve entrapment. Compromise of future, unspecified and unknown claims is improper under FELA, and to the extent the release here purports to do so, it would be invalid.

¶ 14 In addition, Wolf challenges provisions in the release that allow Conrail to terminate its own liability by assigning its payment obligation under the structured settlement to an annuity company, where that assignment apparently provides no recourse to Wolf in the event that the annuity company fails or becomes insolvent. The challenged release terms provide, in part:

> The parties hereto expressly understand and agree that if an assignment of the duties and obligations to make said future payments is made by [Conrail] to [the annuity company], all of the duties and responsibilities otherwise imposed upon [Conrail] by this agreement with respect to such future payments shall instead be binding solely upon [the annuity company] [and then] Conrail shall be released from all obligations to make such future payments . . . .

These terms do not appear on the record as part of the settlement agreement, and they are therefore not valid terms in that agreement. *Century Inn, supra.* The trial court erred when it ordered Wolf to sign a written release that was not in all respects consistent with the agreement placed upon the record by the parties and their attorneys. *Johnston v. Johnston, supra.* See also *Wicker, supra* (a release of FELA claims signed without negotiation is void under § 5); *Babbitt, supra* (to be valid under FELA a release must reflect a bargained-for settlement of a known claim for a specific injury as contrasted with an attempt to extinguish potential future claims).[1]

¶ 15 We affirm the trial court's decision enforcing the settlement agreement, but reverse its decision requiring Wolf to sign the release as tendered by Conrail. We remand for further proceedings including, if necessary, the execution of a release that does not contain the provisions declared invalid herein.

¶ 16 Order affirmed in part and reversed in part; matter remanded. Jurisdiction relinquished.

---

1. Because we decide this issue under contract law, we need not consider the additional arguments regarding the general validity of structured settlements under FELA.