Peter Michael **LOVELACE**, by Mother and Natural Guardian, Debra Lovelace, and Debra Lovelace, Individually, Appellants,

v.

**PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 12, 2005.
Filed May 6, 2005.

Jan J.S. Lokuta, Milford, for appellant.

Lise Luborsky, Philadelphia, for appellee.

Before: LALLY–GREEN, BOWES and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 Peter Michael Lovelace, by mother and natural guardian, Debra Lovelace, and Debra Lovelace, individually, appeal from the May 28, 2004 order granting Appellee's preliminary objections and dismissing their complaint. We vacate the order in part and remand with instructions.

¶ 2 This matter concerns the enforcement of a settlement agreement among Appellants and PHICO Insurance Co. ("PHICO") stemming from a medical malpractice claim that was filed against Marian Community Hospital in the United States District Court for the Middle District of Pennsylvania. On February 1, 2002, Peter Lovelace and Mrs. Lovelace, the natural guardians of Peter Michael Lovelace, signed a "Full and Final Release" settling their claims against PHICO and Marian Hospital at their attorney's office in Pike County, Pennsylvania. After the parties executed the agreement, PHICO became insolvent and dissolved without satisfying the $200,000 payment that was due under the settlement. Thereafter, Appellants initiated this action against Appellee, Pennsylvania Property and Casualty Insurance Association, charging that Appellee is liable for the unpaid settlement pursuant to the Pennsylvania Property and Casualty Insurance Guaranty Association Act ("PPCIGA"), 40 P.S. § 991.1801 et seq.

¶ 3 Appellants initially commenced this action in Pike County on November 19, 2003, by filing a motion to enforce the settlement; however, on February 5, 2004,

after Appellee filed preliminary objections to that motion on the basis, *inter alia,* that a civil action had to be commenced by writ of summons or complaint, Appellants filed a complaint in Pike County without answering Appellee's objections. Appellants' complaint was identical to their previous motion to enforce the settlement. Appellee countered with preliminary objections to the complaint on the grounds of improper venue and failure to plead that Appellants exhausted any additional insurance remedies pursuant to 40 P.S. § 991.1817(a). These preliminary objections also included an affidavit from Stephen F. Perrone, Appellee's claims manager, which asserted that Appellee did not regularly conduct business in Pike County.

¶ 4 On March 15, 2004, Appellants appeared before the court to challenge the inclusion of Mr. Perrone's affidavit in Appellee's preliminary objections and argued that if the court was going to consider Mr. Perrone's affidavit, then it should also consider an affidavit submitted by Appellants' counsel, Charles Kannebecker. Appellants contend that Mr. Kannebecker handed the affidavit to the trial court during the March 15, 2004 proceeding. However, the whereabouts of that affidavit are now unknown; the trial court disputes receiving it and requests that it not be considered on appeal. Appellee concedes that the affidavit was handed to the trial court; however, it notes that a copy of the affidavit was not filed until July 13, 2004, long after the record was certified for our review.

¶ 5 On April 16, 2004, the trial court dismissed Appellants' initial motion to enforce the settlement. No appeal was taken from the order.[1] On May 17, 2004, the

---

**1.** Since Appellants filed a complaint before the court dismissed their motion to enforce

the settlement and the trial court apparently considered Appellants' complaint to be an

parties stipulated that the only objections relevant to Appellants' complaint concerned whether venue in Pike County was proper and whether Appellants pled exhaustion of their insurance remedies. These issues were submitted to the court on the existing record, which the parties then believed to include both affidavits.

¶ 6 On May 28, 2004, the trial court granted Appellee's preliminary objections on both grounds and dismissed Appellants' complaint. This appeal followed.

¶ 7 Appellants raise three issues:

1. Did the trial court err in *sua sponte* asking the Superior Court not to consider the affidavit of Charles Kannebecker as part of the official record[,] asserting that the original affidavit was not provided to opposing counsel, a fact which is contrary to counsel's recollection of what occurred in open court?

2. Did the Court err in granting a preliminary objection as to venue under Pennsylvania Rule of Civil Procedure 1028 a.1 [sic] where [the] full and final release sued upon was executed in Milford, Pike County, Pennsylvania?

3. Did the trial court err in granting a preliminary objection for failure to plead exhaustion of remedies where such exhaustion of remedies is an affirmative defense and should be properly pled by Appellee?

Appellants' brief at 6. For judicial convenience, we address the sufficiency of Appellants' complaint first.

■■■■ ¶ 8 At the outset, we set forth our standard of review, which we recently stated as follows:

When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*Swisher v. Pitz,* 2005 PA Super 56, ¶5, 868 A.2d 1228.

¶ 9 This issue concerns whether Appellants were required to plead that they exhausted their rights to other insurance benefits before seeking payment from the Guaranty Association. In pertinent part, 40 P.S. § 991.1817(a) of the PPCIGA provides that "[a]ny person having a claim under an insurance policy shall be required to exhaust first his right under such policy .... Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance."

■■■■ ¶ 10 Appellants concede that their six-paragraph complaint did not address the Act's exhaustion requirement; however, they argue that section 991.1817(a) creates an affirmative defense to recovery, which Appellee must plead as new matter pursuant to Pa.R.C.P. 1030. Appellants continue that since they were not required to anticipate Appellee's potential defenses when they drafted their complaint, their pleading was sufficient to survive Appellee's demurrer. For the following reasons, we disagree.

amended complaint in relation to the defective motion, we conclude that the order dismissing the motion was not an appealable final order.

¶ 11 Appellants' position relies upon the Commonwealth Court's holding in *LSC Holdings v. Insurance Commissioner of Pennsylvania*, 151 Pa.Cmwlth. 377, 616 A.2d 1118 (1992). In that case, the Commonwealth Court reviewed whether a petitioner set forth a cause of action for reimbursement of payments made in excess of the self-insurance limits under the Workers' Compensation Security Fund Act. The relevant provision stated, in pertinent part, "The insolvency, bankruptcy, or dissolution of the insured shall effect a termination of security fund benefits provided hereunder ...." 77 P.S. § 1061(1.1). The respondents demurred to the petitioner's claim, arguing that since the petitioner failed to aver that it was neither insolvent, bankrupt, nor dissolved, it failed to set forth a cause of action under the Act. The petitioner countered that the substance of the respondents' position equated to an affirmative defense and argued that it was not required to anticipate the respondents' potential defenses when drafting its petition. The Commonwealth Court accepted the petitioner's position without additional analysis and overruled the respondents' demurrer.

¶ 12 We are not persuaded by the Commonwealth Court's holding in *LSC Holdings*. Unlike the provision at issue in that case, which merely states that the occurrence of an enumerated event would terminate the guaranty's statutory obligation, the exhaustion requirement in the case-at-bar is not a defense. Rather, it is an element of the claim, which the proponent must satisfy in order to prevail. *See Hen-*

*ninger v. Riley*, 317 Pa.Super. 570, 464 A.2d 469 (1983).

¶ 13 In *Henninger*, this Court held that under the Pennsylvania Insurance Guarantee Association Act ("PIGAA"), the forerunner of the present PPCIGA, claimants had to exhaust their rights to existing policies before proceeding against the Guaranty Association. Reasoning that the exhaustion of other insurance remedies precedes any obligation by the Guaranty Association to assume the insolvent insurer's liability, we listed the elements of a claim brought under that statute as follows:

[T]he Act itself explicitly declares that the Association does not stand in the stead of the insolvent insurer until:

1. The claim in question is determined to be a "covered claim."

2. The extent of the obligation of the Association on the covered claim is determined.

3. The claimant has exhausted his rights against his insurer under any provision in an insurance policy he maintains.

*Id.* at 472 (citations omitted). Accordingly, we held that the PIGAA did not apply until, *inter alia*, "the claimant has exhausted his rights against his insurer under any provision in an insurance policy he maintains." *Id.*

¶ 14 Since the former act almost is virtually indistinguishable from the current PPCIGA in relation to the exhaustion of remedies,[2] our express reasoning in *Hen-*

---

**2.** The relevant portion of PIGAA provides,

Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such a policy. Any amount payable on a covered claim under this act shall be re-

duced by the amount of any recovery under such insurance policy.

40 P.S. § 1701.503(a) (repealed and replaced by 40 P.S. § 991.1817(a) effective February 10, 1995). The pertinent provision in the present statute states, "[a]ny person having a claim under an insurance policy shall be required to exhaust first his right under such

*ninger* is highly persuasive. Although the *Henninger* Court did not address the sufficiency of a pleading under Rule 1028, it identified the elements of the statutory claim and concluded that the exhaustion of all available insurance remedies was required.

¶ 15 Herein, Appellants' complaint alleged that the Act applied to their insurance settlement claim following PHICO's insolvency and default. According to *Henninger*, in order to prevail on this claim, Appellant had to prove, *inter alia*, that they exhausted all existing rights to insurance coverage. Appellants failed to plead this element of their cause of action. Hence, we conclude that the trial court did not err in sustaining Appellee's demurrer.[3]

█ ¶ 16 While we affirm the trial court's order sustaining Appellee's demurrer, we nevertheless vacate that order to the extent that it dismissed Appellants' complaint. Instead, mindful that this was a case of first impression and that Appellants were not granted an opportunity to amend their complaint prior to taking this appeal, we remand the matter to the trial court with instructions to grant Appellants leave to amend. *See Binswanger v. Levy*, 311 Pa.Super. 41, 457 A.2d 103 (1983) (granting plaintiff leave to amend complaint on remand from appeal of order sustaining preliminary objections and dismissing complaint; plaintiffs were constrained to appeal final order dismissing their claim, no assertion that appeal was interposed for delay or harassment, and it

did not appear that law would preclude recovery in light of amendments).

█ ¶ 17 Next, we address whether venue lay in Pike County. Generally, we review a trial court order sustaining preliminary objections based upon improper venue for an abuse of discretion or legal error. *See Krosnowski v. Ward*, 836 A.2d 143 (Pa.Super.2003) (decision to transfer venue will not be reversed unless trial court abused discretion). However, if venue is improper in Pike County, the trial court is constrained to transfer the case to a proper county, not dismiss the action. *See* Pa.R.C.P. 1006(e).

¶ 18 Where, as here, an action involves an unincorporated association, venue is proper, *inter alia*, where the transaction that is the basis of the cause of action occurred. Pa.R.C.P. 2156(a). In *Lucas Enterprises, Inc. v. Paul C. Harman Co., Inc.*, 273 Pa.Super. 422, 417 A.2d 720, 721 (1980), we concluded that a contract is formed at the place of acceptance, which "undoubtedly constitutes a 'transaction or occurrence' sufficient to establish venue." Hence, the crux of this issue is whether the settlement agreement occurred in Pike County, where Mr. and Mrs. Lovelace executed the Full and Final Release, or, as Appellee argues, the unidentified county where the parties purportedly agreed to settle the malpractice action before the United States District Court.

¶ 19 Appellee relies upon *Wolf v. Consolidated Rail Corp.*, 840 A.2d 1004 (Pa.Super.2003), for support of its position. In

---

policy .... Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance." 40 P.S. § 991.1817(a).

**3.** Further, while Appellants' brief does not challenge the propriety of applying the exhaustion requirement to a claim that arose from a pre-insolvency settlement agreement, we observe that section 991.1817(a) applies to

pre-insolvency settlements. *See Bell v. Slezak*, 571 Pa. 333, 812 A.2d 566 (2002) (applying section 991.1817 to claim stemming from pre-insolvency settlement to bar recovery because plaintiffs received insurance benefits that exceeded limits of Property and Casualty Insurance Guaranty Association's statutory liability).

*Wolf,* we held that an oral settlement agreement would be enforceable before a release is signed. Notably, venue never was at issue in *Wolf.* Nevertheless, Appellee attempts to extrapolate from *Wolf* the conclusion that venue based on the location of the transaction in this case is proper only in the county where Appellants and PHICO initially agreed to settle the medical malpractice lawsuit. For the following reasons, we reject Appellee's argument and conclude that venue is proper in Pike County.

 ¶ 20 We follow *Lucas Enterprises, Inc., supra,* on the basis that the document being sued upon, the Full and Final Release between Appellants and PHICO, was accepted by Mr. and Mrs. Lovelace in Pike County. While *Wolf* involved a verbal settlement agreement that never was reduced to writing, by its own terms, the Full and Final Release states that no written or oral agreements existed that was not incorporated therein, and the release made no reference to the prior oral agreement. Hence, the Full and Final Release constitutes the complete and exclusive settlement agreement. *See Brinich v. Jencka,* 757 A.2d 388 (Pa.Super.2000) (where parties to agreement adopt writing as final, complete expression of agreement, alleged prior oral agreement concerning subjects that are dealt with in written contract are merged in or superseded by that contract). Consequently, the integration clause rendered the oral settlement a legal nullity, and it could not be the basis of this lawsuit. Thus, venue is proper in Pike County where Appellants accepted the written settlement agreement.

¶ 21 Accordingly, we vacate the order sustaining Appellee's preliminary objection

based on improper venue, and remand the case with directions to grant Appellants leave to file an amended complaint.[4]

¶ 22 Order affirmed in part, vacated in part, and remanded with instructions. Jurisdiction relinquished.

---

4. We have no opinion concerning the propriety of Appellee's affidavit in support of its preliminary objections to Appellants' complaint or the trial court's request for us to ignore Appellants' subsequent affidavit in opposition to those preliminary objections. Our disposition renders these issues moot.