J-S33012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VANESSA M. BARBETTI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| SEYED EMAD ADIN KHAZRAEE | : | |
| AFZAL, MEHRNOUSH SOROUSH, | : | |
| JOSHUA F. DAYANIM, SUZANNE L. | : | |
| DAYANIM, SARAH SIAH A/K/A | : | |
| FOROUZAN SIAH-FALLAHI, | : | |
| COLDWELL BANKER PREFERRED - | : | |
| WAYNE, NRT PHILADELPHIA LLC | : | No. 32 EDA 2025 |
| D/B/A COLDWELL BANKER REALTY, | : | |
| 1927 POPLAR STREET | : | |
| CONDOMINIUM ASSOCIATION | : | |

Appeal from the Order Entered November 22, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  210600621

BEFORE:  BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BOWES, J.:        **FILED JANUARY 13, 2026**

Vanessa M. Barbetti ("Ms. Barbetti") appeals *pro se* from the order granting the joint motion to enforce settlement agreement (the "Joint Motion") filed by Seyed Emad Adin Khazraee Afzal, Mehrnoush Soroush, Joshua F. Dayanim, Suzanne L. Dayanim, and 1927 Poplar Street Condominium Association (the "HOA") (collectively, "Defendants").  We affirm.

This matter arises from Ms. Barbetti's purchase of a condominium from Defendants.  Mr. Afzal and Ms. Soroush were the previous owners and the sellers of the property Ms. Barbetti purchased, while Mr. and Mrs. Dayanim are part of the HOA for the condominium, along with Ms. Barbetti.  Shortly

after her purchase, Ms. Barbetti filed a complaint against Defendants asserting, *inter alia*, that they did not disclose certain material defects.[1] Specifically, Ms. Barbetti alleged that the sewer line, back patio area, patio drain, property structure, stucco, roof, and sprinkler system were faulty and had not been fixed upon her purchase of the property. **See** Joint Motion, 7/16/24, at Exhibit A.

_____

[1] In her complaint, Ms. Barbetti also asserted claims against Sarah Siah A/K/A Forouzan Siah-Fallahi, Coldwell Banker Preferred - Wayne, and NRT Philadelphia LLC D/B/A Coldwell Banker Realty (collectively, "Additional Defendants"). Ms. Siah was the real estate agent in this transaction, being licensed by Coldwell Banker and NRT Philadelphia. Ms. Barbetti averred against Additional Defendants fraud, negligence, and claims pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and the Real Estate Licensing and Registration Act. Additional Defendants filed a motion for summary judgment asserting that none of Ms. Barbetti's claims against them had any merit, which the court granted. In its order, the court stated that Additional Defendants' motion was granted "in its entirety" but dismissed Ms. Barbetti's claims "without prejudice." **See** Order, 9/21/23.

Summary judgment is governed by Rule 1035.2, which "sets forth the general principle that a motion for summary judgment is based on an evidentiary record which entitles the moving party to judgment as a matter of law." Pa.R.Civ.P. 1035.2, *Note*. Conversely, "a dismissal without prejudice is not intended to be *res judicata* of the merits of the controversy. . . . [T]he phrase 'without prejudice' ordinarily imports the contemplation of further proceedings." **Robinson v. Trenton Dressed Poultry Co.**, 496 A.2d 1240, 1243 (Pa.Super. 1985) (cleaned up).

To the extent that the court's order granted Additional Defendants' motion but suggested that Ms. Barbetti was free to reassert claims against them, Ms. Barbetti did not do so. She also did not appeal herein the order granting Additional Defendants' motion for summary judgment. Accordingly, no claims against Additional Defendants remain in this case. Thus, the appealed-from order enforcing Ms. Barbetti's settlement agreement with Defendants was a final order disposing of all claims as to all parties.

On the morning of the scheduled jury trial, the parties attempted to resolve the matter among themselves. Defendants via email proposed a certain sum to Ms. Barbetti in exchange for "a general release." *Id*. at Exhibit B. Ms. Barbetti responded with a numerical figure, and some exchanges of numbers followed without success. When the parties appeared for trial, the court conducted a settlement conference mediated by the Honorable Judge Caroline Turner. The court conducted confidential negotiations that resulted in a settlement agreement. Accordingly, the court placed the following on the record:

> This . . . was a case concerning damages to property and the settlement is for that property damage.
>
> As part of the negotiation for settlement, all four lawyers and [Ms. Barbetti] have agreed to the confidentiality of not only the settlement itself but all settlement negotiations; things that were said during settlement; and amounts being contributed by each of the [D]efendants.
>
> The settlement involves a release being issued today. Once [Ms. Barbetti] has executed the release and notarized it, the monies will be received by [Ms. Barbetti] within [thirty] business days. The settlement agreement was negotiated by [Judge Turner].
>
> . . . . [Judge Turner] will be retaining jurisdiction in this case to make sure that any of the eventualities that could possibly go wrong . . . are mediated and sorted out by [her].
>
> Post-settlement agreement, [Ms. Barbetti] was very concerned that some of the motions she had filed might be accessed by members of the public at some later stage. [Judge Turner] actually got the records that she was concerned about sealed.
>
>     . . . .
>
> [T]he settlement was for $175,000.

N.T. Hearing, 7/1/24, at 3-6 (the "Oral Agreement"). Counsel for Defendants confirmed that the material terms of the agreement were accurately recited by the court, as did Ms. Barbetti. The court concluded proceedings, with the terms of the Oral Agreement to be reduced to writing for Ms. Barbetti's execution.

Later that day, Defendants emailed a proposed release to Ms. Barbetti pursuant to the Oral Agreement, with the subject line "Barbetti v. Khazraee, et al – Confidential General Release." Joint Motion, 7/16/24, at Exhibit D. The attached file was named the "Confidential General Release," and the document was titled "Confidential Settlement Agreement and General Release" (the "Agreement"). *Id*. at Exhibits D and E. In sum, the Agreement stated that in exchange for $175,000 from Defendants, Ms. Barbetti agreed to forgo any and all claims relating to her purchase of the condominium against them and any third-party. Mr. Afzal, Ms. Soroush, and Mr. and Mrs. Dayanim specified that their insurance companies would pay their contributions to the settlement.

Ms. Barbetti responded by email the following day, explaining that she forwarded the Agreement to her accountant to confirm that she would not have to pay taxes on the funds. *See* Response in Opposition to Joint Motion, 8/27/24, at Exhibit B. She further questioned the necessity of paragraph seven, which stated that Ms. Barbetti would provide her personal information,

such as her social security number, to Defendants to satisfy their insurance obligations. *Id*.

One week later, Ms. Barbetti sent Defendants a revised version of the Agreement with edits and comments. Generally, Ms. Barbetti disputed that she agreed to release Defendants and third parties from future suits. She also complained that the Agreement contained legalese with which she was unfamiliar. The parties exchanged several emails disputing various terms.

Ms. Barbetti thereafter authored her own written release. Notably, she: (1) stated that the settlement "shall dismiss only the allegations in the above-captioned case against [Mr. Afzal, Ms. Soroush, Mr. and Mrs. Dayanim, and the HOA], and does not settle other cases or matters;" (2) declared that she had the right to pursue action against any non-settling defendant "that was dismissed without prejudice during this lawsuit;" and (3) conserved her right to initiate suit against Mr. and Mrs. Dayanim "for any actions or events that occurred after the purchase of her home." *Id*. at Exhibit D. Ms. Barbetti signed and notarized her version of the agreement. Defendants did not approve of this document.

In an effort to address Ms. Barbetti's concerns, Defendants proposed a simplified two-page agreement, which stated that, in exchange for $175,000, Ms. Barbetti would,

> release and forever discharge [Mr. Afzal, Ms. Soroush, Mr. and
> Mrs. Dayanim, their insurance companies, and the HOA], their
> successors, assigns, respective heirs, employees, agents,
> personal representatives, affiliates, and any and all persons, firms

or corporations liable or who might be claimed to be liable, whether or not herein named, none of whom admit any liability to [Ms. Barbetti], but all expressly denying liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, which [Ms. Barbetti] now has or may hereafter have, arising out of or in any way relating to the purchase by [Ms. Barbetti] of the [condominium], and relating to the claims which were asserted, or which could have been asserted by [Ms. Barbetti] in a civil action filed by her in the Court of Common Pleas of Philadelphia, entitled **Vanessa Barbetti v. Khazraee, et al**, Docket No. 210600621, including any and all damages of any and every kind, to both person and property, and also any and all injuries and damages that may develop in the future, as a result of or in any way relating to the property purchase, including but not limited to alleged defects raised in the [c]omplaint regarding the sewer line, roof, stucco, back patio drain, back patio area, building structure and/or foundation, sprinkler system[,] and/or any other alleged defects known or unknown at the [condominium].

This release is not intended to release or absolve the respective members of [the HOA], which is currently comprised of [Ms. Barbetti] and [Mr.] and [Mrs.] Dayanim, from their duties to maintain the common elements as defined within the Declaration and Bylaws of the HOA, nor is this release intended to release or absolve the respective members from their duties to pay for their portions of any fees, dues or other assessments in furtherance of the same pursuant to the Declaration and Bylaws of the HOA.

Joint Motion, 7/16/24, at Exhibit L (the "Amended Agreement"). When Ms. Barbetti refused to acquiesce, Defendants sought to enforce the settlement by filing their Joint Motion.

Judge Turner scheduled oral argument. However, Ms. Barbetti contacted Judge Turner via email and demanded her recusal for exhibiting bias and for allegedly sending two detectives to her home to investigate a fake complaint. Ms. Barbetti also stated that Judge Turner exhibited fraud for entertaining the Joint Motion. Judge Turner recused, cancelled oral argument,

and assigned the matter to a different judge. Thereafter, the Honorable Judge Denis P. Cohen issued a rule returnable as to why the Joint Motion should not be granted.

Ms. Barbetti submitted a response in opposition to the Joint Motion and raised additional issues by new matter. Pertinently, she argued that the trial court should deny the Joint Motion because Defendants added terms not present in the Oral Agreement, including the type and scope of the release. *See* New Matter, 8/27/24, at ¶¶ 63, 69. She further averred that, despite having Judge Turner recuse from the case, Defendants were evading their obligation to mediate any disputes before that judge as set forth in the Oral Agreement. *Id*. at ¶¶ 56-61.

On September 4, 2024, Judge Cohen held a hearing on the Joint Motion. Counsel for Defendants explained that during the confidential settlement negotiations with Judge Turner, they consistently communicated their desire for a general release, and they were unaware of any dispute from Ms. Barbetti regarding the scope of the release. During negotiations, they did not communicate with Ms. Barbetti directly. However, Defendants maintained that they continually asserted to Judge Turner that they desired a general release, and they trusted that the judge accurately communicated that information to Ms. Barbetti.

Also, Defendants explained that once the settlement had been reached, Judge Turner brought them into her chambers for a "final colloquy" where a

"general release" was discussed with all parties present, and Ms. Barbetti did not question, object to, or state that she failed to understand the scope of the general release. *See* N.T. Hearing, 9/4/24, at 10-14, 21. Defendants further stated that at the conclusion of the colloquy, Judge Turner ordered Defendants to reduce the Oral Agreement to writing and send it to Ms. Barbetti for execution. Lastly, Defendants provided the court with copies of the email exchanges on the morning of the settlement conference revealing that they proposed a certain sum to Ms. Barbetti in exchange for a general release, and her counter altered only the dollar figure.

For her part, Ms. Barbetti maintained that she never agreed to a general release. She attested that Judge Turner "said to [her] that this release [would] only [be] for the settling defendants . . . [b]ecause . . . two defendants [were] dismissed without prejudice." *Id*. at 16. Despite requesting Judge Turner's recusal, she complained that Defendants neglected to mediate through Judge Turner when it became clear that she did not agree with the terms Defendants proposed. Although Ms. Barbetti did not dispute that a settlement had been reached, as she had reduced the Oral Agreement to writing by printing and signing the transcript of it, she explained that the agreement she drafted more accurately reflected the agreed-upon terms. She further relied upon *Wolf v. Consolidated Rail Corp.*, 840 A.2d 1004 (Pa.Super. 2003), to support her contention that the court could not order her

to sign a contract with a release to which she did not agree. Finally, Ms. Barbetti accused Defendants of taking advantage of her *pro se* status.

At the conclusion of the hearing, the court took the matter under advisement and allowed Ms. Barbetti one week to procure additional evidence that she did not agree to a general release. In a praecipe to supplement the record, Ms. Barbetti produced, *inter alia*, two emails from June 2022 and October 2023, wherein she stated that she was not interested in a global release of Defendants because each party was responsible for differing monetary amounts of damage. **See** Praecipe to Supplement Record, 9/12/24, at Exhibits E and G.

By order of November 22, 2024, the court granted Defendants' motion and ordered Ms. Barbetti to execute a slightly modified version of the Amended Agreement.[2] This timely appeal followed, and Ms. Barbetti and the court complied with Pa.R.A.P. 1925. In her brief, Ms. Barbetti raises fifteen issues:

> I. The trial court erred in denying [Ms. Barbetti]'s new matter to enforce the [Oral Agreement,] which includes all the essential elements of a valid contract, including an offer, acceptance, and consideration, and to which all parties agreed on the record to be bound by the same.
>
> II. The trial court erred in denying [Ms. Barbetti]'s new matter to enforce the release that she executed, had notarized, and sent

---

[2] The court struck a non-disparagement clause because that term was not part of the Oral Agreement, and a clause requiring Judge Turner to conduct any mediations, given her recusal at Ms. Barbetti's request.

to [Defendants]' counsel on August 6, 2024, which incorporates the in-court settlement agreement, or, alternatively, the Oral Agreement itself that [Ms. Barbetti] reduced to writing and executed.

III. The trial court erred in ordering [Ms. Barbetti] to execute the unilaterally drafted release[, the Amended Agreement,] when [Ms. Barbetti] did not bargain for it and there is no evidence to support that the [Oral Agreement] was intended to be replaced by this new contract.

IV. The trial court erred in ordering [Ms. Barbetti] to execute the [Amended Agreement,] which contains overly broad, ambiguous language, it deviates from the agreement reached in open court and is laden with legal jargon that [Ms. Barbetti] does not understand.

V. The trial court erred in finding that a general release was discussed with [Ms. Barbetti] and that [Ms. Barbetti] agreed to it, when the record shows that only Judge Turner and judicial law clerk Shawn Spellacy were privy to the settlement discussions with [Ms. Barbetti] during mediation, and neither Judge Turner nor Shawn Spellacy testified to such discussions at the evidentiary hearing on September 4, 2024.

VI. The trial court erred in finding that [Ms. Barbetti] must execute a general release, when the negotiations between [Ms. Barbetti] and [Defendants] up until the eve of trial focused on individual releases, and [Ms. Barbetti] had clearly stated in 2022 that she would not agree to a global release for any amount of money due to her continuing business relationship with [Mr.] and [Mrs.] Dayanim, as well as her active role as still a member of [the HOA], and such an agreement does not make any sense in this situation.

VII. The trial court erred in placing the burden of proof on [Ms. Barbetti] to establish that she had not agreed to [the Amended Agreement,] when the burden should have been on [Defendants] to prove that such an agreement was formed, and [Defendants] failed to meet that burden.

VIII. The trial court erred in placing greater weight on the testimony and/or credibility of counsel for [Defendants], despite [Ms. Barbetti] presenting compelling evidence that counsel for

[Defendants] had knowingly deceived the court during motions *in limine* on February 2, 2024 (Ctrl. No. 50-24061850) in order to secure an unjust ruling, and that [Ms. Barbetti] alleged that counsel for [Defendants] repeated this deceptive conduct during the evidentiary hearing, and that a pattern of misconduct had been previously recognized by this court, in which an order for sanctions was entered by the trial court against counsel for [Defendants] on September 1, 2022 (Ctrl. No. 80-22081080[).]

IX.    The trial court erred by failing to order the payment of interest pursuant to [Pa.R.Civ.P.] 229.1(c) for [Defendants]' breach of contract, particularly in light of [Defendants]' insertion of at least one improper clause in [the Amended Agreement,] and/or [Defendants]' failure to accept one of two releases executed by [Ms. Barbetti], as outlined in paragraph [four].

X.    The trial court erred in ignoring [Ms. Barbetti]'s allegations and the evidence that Judge Turner exhibited bias, unfairness, and/or prejudice against [Ms. Barbetti], and that [Ms. Barbetti] contends Judge Turner engaged in fraud on the court in her handling of the settlement reached on July 1, 2024.

XI.    The trial court erred in denying [Ms. Barbetti]'s new matter to dismiss [Defendants]' motion to enforce settlement without first requiring mediation with the court, as explicitly agreed to in the settlement reached on July 1, 2024.

XII. The trial court abused its discretion in granting [Defendants]' [Joint] Motion and denying [Ms. Barbetti]'s new matter.

XIII. The trial court's findings of fact are not supported by competent evidence.

XIV.    The trial court erred in its conclusions of law.

XV.    The trial court's decision is against the weight of the evidence, and thus led to a legally incorrect decision.

Ms. Barbetti's brief 7, 9, 13, 25, 28, 30-34, 36, 39-41, 44-45 (some capitalization altered).[3]

Initially, we note that in contravention of Pa.R.A.P. 2119, claims four through eight, ten through twelve, and fourteen through fifteen fail to cite any legal authority. We will not consider the merits of those underdeveloped matters. ***See Kalili v. State Farm Fire and Cas. Co.***, 330 A.3d 396, 406 (Pa.Super. 2024) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant.").

Also, Ms. Barbetti's claim pursuant to Pa.R.Civ.P. 229.1 is premature. Therein, she seeks interest on the settlement funds as a sanction against Defendants for untimely payment. The Rule states, in pertinent part:

---

[3] Appellant's brief fails to comply with the requirements of Pa.R.A.P. 2111(a)(4) (statement of the questions involved); Pa.R.A.P. 2111(a)(5) (statement of the case); Pa.R.A.P. 2111(a)(6) (summary of argument); and Pa.R.A.P. 2111(a)(8) (argument section). The statement of the case, summary of the argument, and argument section are wholly omitted from the brief, while the statement of the questions involved improperly includes argument. ***See*** Pa.R.A.P. 2116. For ease of disposition, we have compiled a statement of questions from the headings in Ms. Barbetti's brief.

(c) If a plaintiff and a defendant have entered into an agreement of settlement, the defendant shall deliver the settlement funds to the attorney for the plaintiff, or to the plaintiff if unrepresented, within twenty calendar days from receipt of an executed release.

(d) If settlement funds are not delivered to the plaintiff within the time required by subdivision (c), the plaintiff may seek to

(1) invalidate the agreement of settlement as permitted by law, or

(2) impose sanctions on the defendant[.]

Pa.R.Civ.P. 229.1. Since Ms. Barbetti has yet to execute an agreed-upon release, Defendants' payment has not become due. Therefore, there is no basis for sanctions at this juncture.

We therefore consider issues one, two, three, and thirteen, which have been properly preserved and are substantiated by citations to legal authority and the certified record. At bottom, Ms. Barbetti asks us to decide through these four issues whether the court properly found that she agreed to a general release of all Defendants.

We begin with an overview of the applicable legal precepts:

The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision.

***Mastroni-Mucker v. Allstate Ins. Co.***, 976 A.2d 510, 517-18 (Pa.Super. 2009) (cleaned up).

- 13 -

Ms. Barbetti does not dispute that a settlement was reached, but avers that the terms were limited to those stated in the Oral Agreement. *See* Ms. Barbetti's brief at 7. The Oral Agreement, however, failed to define the scope of the release. *See* N.T. Hearing, 7/1/24, at 3 ("The settlement involves a release being issued today"). Ms. Barbetti contends that she intended only to absolve Defendants from the claims asserted in her complaint, while Defendants maintain that the release was envisioned to be general. On that note, "[a] court determines the effect of a release from its language, and we give language its ordinary meaning unless the parties clearly intended a different meaning." *Prof. Flooring Co., Inc. v. Bushar Corp.*, 152 A.3d 292, 299 (Pa.Super. 2016) (cleaned up). We have explained that "[a] release ordinarily covers only such matters as can fairly be said to have been within the contemplation of the parties when the release was given." *Id*. at 300 (cleaned up). However, neither the parties nor Judge Tuner was specific on the record as to the scope of the release, negotiations were held confidentially, and the mediating judge recused from this matter.

As in this case, where the formation of a contract is "wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent." *Prieto Corp. v. Gambone Const. Co.*, 100 A.3d 602, 609 (Pa.Super. 2014). When negotiations are held off the record, "the issues of what was said, done, and

agreed upon by the parties are ones of fact to be determined by the fact finder. Also, the question of the intent of the parties is a factual one reserved to the province of the fact finder." ***Krebs v. United Refining Co. of Pennsylvania***, 893 A.2d 776, 783 (Pa.Super. 2006). This Court "will not disturb the findings of a trial judge sitting as fact finder unless we determine that the court's factual findings are not based on competent evidence of record." ***Id***. Under these circumstances, "the evidence is to be viewed in a light most favorable to the party that prevailed below, rejecting all inferences arising from the evidence that are unfavorable to the prevailing party." ***Id***. (cleaned up).

With these precepts in mind, we turn to Ms. Barbetti's claim. She contends that Defendants have attempted to supersede the Oral Agreement with a "unilaterally drafted document that excluded key provisions [Ms. Barbetti] had negotiated and inserted foreign, unfamiliar and unjustified terms never discussed nor agreed to." Ms. Barbetti's brief at 7. Specifically, Ms. Barbetti maintains that the Amended Agreement omits a statement that settlement funds would be used to repair property damage and that identifying information and records relating to her medical history would be sealed, and also improperly "contains a sweeping general release." ***Id***. at 19, 21-22 (citing ***Wolf***).

Based upon these accusations, Ms. Barbetti asserts that the trial court erred in ordering her to execute the Amended Agreement over her own version and claims that Defendants have not presented any evidence that she agreed

to a general release. *Id*. at 8, 17-18. She criticizes the trial court's reliance upon the email exchanges on the morning of July 1, maintains that the court erred in treating those emails as an agreement to settle in exchange for a general release, and explains that they merely represented negotiations. *Id*. at 16-17, 22, 42-43.

The trial court determined that "the parties agreed to a general release as part of their settlement," and therefore the release outlined in the Amended Agreement was an accurate recitation of the parties' intentions. *See* Trial Court Opinion, 4/2/25, at 2. As evidentiary support, the court first looked to the email exchanges between the parties preceding the settlement conference, which stated that Defendants proposed "a general release" in exchange for a certain sum. *Id*. at 2 (citing Joint Motion, 7/16/24, at Exhibit B). The court observed that, in subsequent email responses, Ms. Barbetti did not dispute the scope of the release and only negotiated the monetary amount of the settlement. *Id*. The court also noted that Judge Turner stated on the record that the settlement "involve[d] a release being issued" in exchange for $175,000, the parties agreed that those were the essential terms of the agreement, and Ms. Barbetti did not seek to qualify the scope of the release. *Id*. (quoting N.T. Hearing, 7/1/24, at 3).

The court then analyzed the evidence regarding the parties' conduct following the settlement conference. Defendants emailed the Agreement to Ms. Barbetti with the subject line "Barbetti v. Khazraee, et al – Confidential

General Release," the file attached to the email was called the "Confidential General Release," and the document was titled "Confidential Settlement Agreement and General Release." *Id*. at 2-3. When Ms. Barbetti received that copy, the court discerned that she failed to object to the scope of the release and only questioned whether she needed to provide her social security number. *Id*. at 3.

Finally, at the hearing on the Joint Motion, the court explained that "[Defendants] asserted to [the c]ourt that they communicated all settlement offers contingent on a general release." *Id*. Accordingly, the trial court did not find credible Ms. Barbetti's assertion that she did not agree to a general release. Rather, it believed that Ms. Barbetti's complaints were "buyer's remorse." *Id*. at 4.

Upon review, we conclude that the trial court's finding that the parties' agreed to a general release is supported by the record, and we discern no error of law in its analysis. Viewing the evidence in the light most favorable to Defendants, they have demonstrated their consistency in seeking a general release as part of the settlement. Beginning with the emails preceding the mediation on July 1, Defendants proposed a settlement figure contingent on a "general release." Joint Motion, 7/16/24, at Exhibit B. Contrary to Ms. Barbetti's belief, the trial court did not equate the email negotiations as an agreement to settle. Rather, the court appropriately considered the emails as evidence of the course of dealings between the parties to establish the scope

of the undefined release. ***See Prieto Corp.***, 100 A.3d at 609. As such, it found it compelling that Ms. Barbetti only negotiated the monetary amount of the settlement, and not the scope of the release.

When Defendants reduced the Oral Agreement to writing and emailed the Agreement to Ms. Barbetti, she had plainly reviewed the substance of it since she questioned some of its detail. Yet, she expressed concern only with Defendants' request for her social security number. She failed to dispute, let alone question, the scope of the release until one week later. Although the release was patently comprehensive and broad, Ms. Barbetti did not raise any disagreement, despite the subject line of the email, attachment, and document specifying that it was a "general" release.

Furthermore, at the September 4 hearing, Defendants explained that in reaching the Oral Agreement, they consistently expressed their desire for a general release, believed that Judge Turner accurately communicated that information to Ms. Barbetti, and used the term "general release" during the final colloquy in chambers with Ms. Barbetti present. Defendants were unaware of any objections or questions from Ms. Barbetti regarding the scope of the general release.[4]

_____

[4] Insofar as Ms. Barbetti claims that she lacked knowledge as to the scope of a general release or the meaning of any legalese, her *pro se* status does not garner relief. ***See***, ***e.g.***, ***Smithson v. Columbia Gas of PA/NiSource***, 264 A.3d 755, 760 (Pa.Super. 2021) ("Any layperson choosing to represent himself or herself in a legal proceeding must, to some reasonable extent,
*(Footnote Continued Next Page)*

Meanwhile, there is a dearth of evidence in support of Ms. Barbetti's position. She attached a self-serving affidavit to her notice of appeal after the court had issued the order in question. The opportunity to present additional evidence of her refusal to enter into a general release, however, came with her praecipe to supplement the record. Therein, she did not include this affidavit. Instead, she attached two emails from July 2022 and October 2023. The court did not credit these emails because they were too remote in time to be relevant. *See* Trial Court Opinion, 4/2/25, at 10. Ms. Barbetti seemingly agreed with the court that these emails were irrelevant since she stated at the September 4 hearing that their relevance was attenuated. *See* N.T. Hearing, 9/4/24, at 40 ("It's an email from a long time ago that, honestly, I think has nothing to do with this motion.").

At no time did Ms. Barbetti specify on the record that she wished to preserve future claims against Defendants, and she failed to state that she refused to agree to a general release.[5] As the prevailing party, Defendants

_____

assume the risk that his or her lack of expertise and legal training will prove his or her undoing." (cleaned up)).

[5] To the extent Ms. Barbetti relies upon her desire to pursue future claims against Additional Defendants as evidence that she did not agree to a general release, she has neglected to appeal the order granting Additional Defendants' motion for summary judgment or reassert her claims against them in the trial court. This issue was discussed at the September 4 hearing and revealed that Ms. Barbetti was "[p]otentially" going to pursue claims against Additional Defendants, but that she "ha[dn]'t made that decision." N.T. Hearing, 9/4/24, at 26.

are entitled to favorable inferences deduced from the evidence. *See Krebs*, 893 A.2d at 783. Without any indication that Ms. Barbetti objected to a general release when the Oral Agreement was reached, we cannot infer that Judge Turner failed to communicate Defendants' request for a general release as part of the settlement. *Id*.

We also fail to find Ms. Barbetti's reliance on *Wolf* persuasive. In that case, Wolf filed a complaint against his employer pursuant to the Federal Employers' Liability Act ("FELA"). Prior to trial, the parties orally settled their dispute on the record, but the agreement was "silent as to the execution or terms of any release." *Wolf*, 840 A.2d at 1005-06. Wolf's employer, however, included a general release in the proposed written agreement, which Wolf refused to sign. We explained that "Wolf balked at signing the release because [his employer] sought to make the in-court settlement agreement hinge upon the execution of a release that contained terms that were not a part of that agreement." *Id*. at 1007. We found it relevant that a general release would have violated FELA, Wolf "never had the opportunity to negotiate" it, and his employer did not specify that the agreement was contingent on Wolf's "signature on a broad general release." *Id*. at 1007-08. This Court therefore held that the "trial court erred when it ordered [Wolf] to sign a release, the terms of which he did not approve." *Id*. at 1007.

Here, unlike in *Wolf*, Ms. Barbetti and Defendants agreed that the settlement was dependent upon a release. Ms. Barbetti had the opportunity

to negotiate the terms of the release prior to and during the mediation, and when Defendants sent the Agreement. As noted, there is nothing on the record indicating that Ms. Barbetti objected to a general release until one week after the Oral Agreement had been reached. Further, the parties agreed that Ms. Barbetti would receive the settlement funds once she signed the release. *See* N.T. Hearing, 7/1/24, at 3 ("Once [Ms. Barbetti] has executed the release and notarized it, the monies will be received by [Ms. Barbetti] within [thirty] business days."). ***Cf. Pulcinello v. Consolidated Rail Corp.***, 784 A.2d 122, 124 (Pa.Super. 2001) (holding that the oral settlement agreement was binding despite the absence of a writing because "[t]he signing of the release was not made a condition of the settlement and the tender of the release did not reopen the agreement or make its execution a condition to the settlement itself"). Thus, ***Wolf*** does not support Ms. Barbetti's position.

Lastly, to the extent Ms. Barbetti laments that material terms of the settlement were not included in the Amended Agreement, we do not agree. The essential terms were that in exchange for $175,000, Ms. Barbetti agreed to release Defendants. ***See Mastroni-Mucker***, 976 A.2d at 518 (explaining that the material terms of a contract include "an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)"). These provisions are present in the Amended Agreement. The sealing of certain documents was not a term of the contract as it was a concern of Ms. Barbetti

"[p]ost-settlement agreement." N.T. Hearing, 7/1/24, at 4. Even so, Judge Turner stated that she had those files sealed, and the parties agreed to the confidentiality of their negotiations. *Id*. Additionally, nothing in the Oral Agreement specified that the final written agreement must include that settlement funds would be used to repair property damage. These arguments are meritless.

Based on the aforementioned, the evidence supports the court's determination that a general release could "fairly be said to have been within the contemplation of the parties when the release was given." *Bushar Corp.*, 152 A.3d at 300 (cleaned up). Accordingly, we affirm the court's order granting the Joint Motion and directing Ms. Barbetti to execute a slightly modified version of the Amended Agreement.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/13/2026